UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RAYFORT KNIGHT                                                    CIVIL NO. 09-2293 (JNE/JSM)

    Petitioner,

v.                                                                <u>REPORT AND RECOMMENDATION</u>

Warden B.R. JETT,

    Respondent.

This matter is before the undersigned United States Magistrate Judge on Rayfort Knight's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1]. The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.     FACTUAL BACKGROUND

Petitioner Rayfort Knight ("Knight") is serving a 292-month sentence, followed by five years of supervised release. <u>See</u> Declaration of Ann C. Kinyon ("Kinyon Decl.") ¶ 2, Attach. 1 (Public Information Data), p. 3. Knight is presently incarcerated at the Federal Medical Center at Rochester, Minnesota. Knight was sentenced on August 26, 1994 and currently has a projected release date of December 16, 2014, via good conduct time release. <u>Id.</u>, ¶ 2, Attach. 1 (Public Information Data), p. 3, ¶ 3, Attach. 2 (Sentence Monitoring Independent Sentence Computation).

Knight filed the present Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241("Petition") claiming that he is "eligible for the Elderly Home Detention Program of the Second Chance Act of 2007 and he has been wrongfully denied placement," which would have entitled him, as an individual over the age of 65, to a two-year placement in home confinement. <u>See</u> Petition, pp. 3, 8. Petitioner asserted that he was incorrectly denied

placement because he is currently committed for mental health treatment under 18 U.S.C. § 4245.  Id., p. 9.  Knight acknowledged that he has not brought his claim through the available grievance or administrative remedies procedures.  Id., p. 5.  At the time Knight brought his Petition he was 76 years old.  See Petition, p. 10; see also Government Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 ("Govt. Mem."), p. 2.

The Government argued that Knight's Petition should be dismissed as he has failed to exhaust his administrative remedies; he is not considered an "eligible elderly offender;" as he does not satisfy the eligibility requirement for the Elderly Offender Home Detention Program ("Program") with regards to having served at least 75% of his sentence; and even to the extent he met that requirement, the Bureau of Prisons ("BOP") has the authority and discretion to determine whether an inmate satisfies all of the prerequisites under the Program.  See Govt. Mem., pp. 6-9.

## II.     STATUTORY AND REGULATORY BACKGROUND

On April 9, 2008, The "Second Chance Act of 2007: Community Safety Through Recidivism Prevention" was enacted to "reauthorize the grant program for reentry of offenders into the community in the Omnibus Crime Control and Safe Streets Act of 1968, to improve reentry planning and implementation, and for other purposes."  PL 110-199, 2008 HR 1593 (codified at 42 U.S.C. § 17541).  Included in the reentry initiatives was the Program, which provided:

> The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.

42 U.S.C. § 17541(g)(1)(A). In carrying out the program, the statute provides "the Attorney General may release some or all eligible elderly offenders from the Bureau of Prisons facility to home detention." 42 U.S.C. § 17541(g)(1)(B).

An "eligible elderly offender" under the Program was defined by § 17541(g) as an offender in the custody of the BOP:

> (i) who is not less than 65 years of age;
>
> (ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 16911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced;
>
> (iii) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);
>
> (iv) who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);
>
> (v) who has not escaped, or attempted to escape, from a Bureau of Prisons institution;
>
> (vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and
>
> (vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

42 U.S.C. § 17541(g)(5)(A).

On February 5, 2009, the BOP issued Operations Memorandum No. 003-2009 (5392), Elderly Offender Home Detention Pilot Program ("BOP Memorandum"), in order to provide guidance to BOP staff for administering the Program. See Declaration of Bernetta Miller ("Miller Decl."), Ex. A, p. 1. The BOP Memorandum provides that, "[i]n accordance with the [Second Chance] Act, inmates must meet all statutory eligibility criteria to participate in the pilot program." Id., p. 2. The BOP Memorandum sets forth the "statutory eligibility criteria," including: (1) the inmate must 65 years or older; (2) the inmate has "served the greater of 10 years or 75% of the term of imprisonment to which the offender was sentenced;" and (3) a determination that the inmate's current or previous conviction(s) did not include a crime of violence, a sex offense, an act of terrorism, or an escape from a BOP prison. Id., pp. 3 -6.

To the extent that an inmate meets the statutory eligibility requirements, BOP staff must:

> consider whether the inmate is appropriate to participate in the pilot program. This determination is <u>within the discretion of the Bureau staff</u>, using sound correctional judgment, and based on information the Bureau uses to make classification and programming decisions, pursuant to Section 231(g)(5)(iv) of the Act [codified as 42 U.S.C. § 17541(g)(5)(A)(iv)]. This assessment includes determining whether the inmate presents a substantial risk of that s/he will engage in criminal conduct or endanger any person or the public if placed in home dente4ntion, pursuant to Section 231(g)(5)(vii) [codified as 42 U.S.C. § 17541(g)(5)(A)(vii)].

Id., p. 6 (emphasis added). The BOP Memorandum sets forth a "non-exhaustive list of factors" to be considered as to each inmate including but not limited to: a history of violence, escape or attempted escape, other detainers, alien status custody, classification

4

scoring, and "medical or psychiatric issues, which may indicate the need for care, treatment, and supervision and how the inmate intends to access such care." Id., pp. 6-7 (emphasis omitted).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

The Government first argued that Knight's Petition should be dismissed on the grounds that he has not exhausted his administrative remedies. See Govt. Mem., pp. 6-7. As stated previously, Knight has admitted that he did not exhaust the available administrative remedies. See Petition, p. 5.

The exhaustion requirement can be judicially or statutorily created. If created by statute, exhaustion requirements must be enforced by the courts. See Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy v. Madigan, 503 U.S. 140, 144 (1992). In this case, judicial discretion governs because Congress has not required exhaustion for habeas petitions brought under § 2241. See Gonzales v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (citing James v. Walsh, 308 F.3d 162, 167 (2d Cir. 2002)).

In determining whether Knight should be required to exhaust his administrative remedies, courts exercise their discretion by "balanc[ing] the interests of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." McCarthy, 503 U.S. at 146. Generally, exhaustion is required because it both protects administrative agency authority and promotes judicial economy. Id. at 144-45. In McCarthy, however, the Supreme Court identified several possible

5

exceptions to the general rule that exhaustion is required, one of which was "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." Id. at 148. Here, the BOP has already has made clear that it will not allow Knight to participate in the Program because he has not yet served 75% of his sentence, as is required by 42 U.S.C. § 17541(g)(5)(A)(ii), and because it has discretion to determine whether Knight is eligible to the extent that he meets the necessary statutory requirements. See Govt. Mem., pp. 4-6, 9. As such, the issue raised by the Petition has already been predetermined and there is nothing before this Court to suggest that the BOP would change its mind if Knight had followed the administrative remedy procedure.

Further, waiver of the exhaustion requirement does not implicate the institutional interests protected by the general rule. First, the rule protects agency power by giving it "the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors . . . ." United States v. Dico, Inc., 136 F.3d 572, 576 (8th Cir. 1998). The BOP has had ample opportunity to apply its expertise and exercise its discretion since its issuance of the February 5, 2009 Memorandum, but there is nothing before this Court to suggest that it has an interest in altering its position or correcting the "errors" alleged by Knight in this case, especially as it relates to the statutory criteria that Knight must have served the greater of 10 years or 75 percent of his sentence.

Second, while the rule promotes judicial economy by allowing the agency to fully develop a factual record for judicial review, as well as to aid the court in understanding technical matters, neither rationale are applicable here. Id. The facts of this case are undisputed, and the issue is one of statutory interpretation which is unaffected by any technical matters uniquely within the BOP's area of expertise or by the facts of the case.

The institutional interests protected by the exhaustion requirement carry little to no weight in this case.

The Court recognizes that generally federal prisoners must exhaust all available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241. See, e.g., United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam); Kendrick v. Carlson, 995 F.2d 1440, 1447 (8th Cir. 1993); Leighnor v. Turner, 884 F.2d 385, 38788 (8th Cir. 1989). However, habeas petitioners can be excused from the exhaustion requirement, if they can show that proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. See Elwood v. Jeter, 386 F.3d 842, 844 n. 1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile."); Gonzalez v. O'Connell, 355 F.3d at 1016 (finding that a court may waive the exhaustion requirement for a § 2241 petition to prevent prejudice caused by unreasonable delay or when an agency has predetermined an issue).

This Court does not condone Knight's failure to exhaust his administrative remedies. Nevertheless, because this case falls within one of the exceptions to the general rule articulated by the Supreme Court, and because the balancing of interests favors Knight's interests in having the issue promptly decided over the institutional interests protected by the exhaustion requirement, the Court waives the exhaustion requirement and reaches the merits of Knight's claim.

**B.** **Right to Home Detention**

Knight argued that he should be allowed to enter into home detention because he

meets the requirements for entering the Program under the Second Chance Act of 2007. See Petition, pp. 3, 8, 11. Knight is incorrect. The relevant language of § 17541(g), pertaining to the Program, states that an eligible inmate is one who has "served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced. . . ." 42 U.S.C. § 17541(g)(5)(A)(ii). Seventy-five percent of Knight's 292-month sentence is 18.25 years. The Sentence Monitoring Independent Sentence Computation has calculated that Knight will not have served 75 percent of his sentence until November 7, 2011. See Kinyon Decl. ¶ 3, Attach. 2 (Sentence Monitoring Independent Sentence Computation). Knight has not provided any evidence to dispute this calculation. To the contrary, in his Petition, he admitted that "he has served 70% or more of his sentence." Petition, p. 10. As of the date of this Report and Recommendation, under the plain language of § 17541(g), Knight is not eligible to participate in home detention under the Program, because he has not yet served 75 percent of the term of his imprisonment to which he was sentenced.[1] Failing to meet the first set of statutory requirements necessary to participate in the Program, Knight's Petition should be dismissed.

---

[1] To the extent that Knight is asserting that the BOP's failure to allow him to participate in the Program violated the Due Process Clause of the United States Constitution (see Petition, p. 11), this Court finds that § 17451(g)(1)(A) does not create a constitutionally protected liberty interest in home confinement given the discretion afforded to the BOP in implementing the program. See Brown v. Rios, NO. CIV. 08-5752(JRT/RLE), 2009 WL 5030768 at *11 (D. Minn. Dec. 14, 2009) ("Here, we conclude that the Petitioner does not have a constitutionally protected liberty interest in participating in the Pilot Program. Notably, the Program is to be implemented with respect to those prisoners, and in those prisons, that the BOP selects, in its sole discretion. While the Statute does mandate the creation of the Program, that does not translate into a mandate that would necessarily implicate the duration of the Petitioner's sentence. There is simply nothing in the Statute that would require the BOP to consider every inmate who might meet the eligibility standards. Moreover, we are aware of no authority which holds that a prisoner has a constitutionally protected right to home confinement, or early release, nor is there any

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS RECOMMENDED** that Rayfort Knight's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

Dated: September 13, 2010

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties on or before **September 27, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

support for the contention that Section 17451(g)(1)(A) creates one.").